El Pueblo de Puerto Rico, demandante y apelado, *v.* Luis Hernández, acusado y apelante.

No. 3895.—*Sometido:* Julio 22, 1929. *Resuelto:* Agosto 1, 1930.

*F. Gallardo Díaz,* abogado del apelante; *R. A. Gómez,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El inciso (*m*) del artículo 5 de la "Ley para reglamentar el uso de vehículos de motor en Puerto Rico, y para otros fines," según fué enmendada en 1925, leyes de ese año, pág. 757, lee como sigue:

"El Comisionado del Interior podrá suspender o revocar la licencia de cualquier persona para actuar como chauffeur o conductor, si, a su juicio, dicha persona hubiere sido culpable de imprudencia temeraria o ineptitud en el manejo, o hubiere demostrado indiferencia hacia la seguridad pública o desprecio inexcusable de las disposiciones de esta Ley; y podrá exigir a cualquier persona a quien se hubiere expedido una licencia de acuerdo con este artículo, o que posea una licencia expedida con anterioridad a la aprobación de esta Ley, que se examine de nuevo, si, a su juicio, las circunstancias lo demandaren; *Disponiéndose,* que las personas a quienes se les suspendiese o revocase la licencia para actuar como chauffeur o conductor, al ser notificadas por el Comisionado del Interior, deberán entregar la placa y licencia a la persona que les notificase la orden del Comisionado."

El artículo 18 de la misma ley, después de prescribir las penas por ciertos delitos que se cometan por los dueños o conductores de vehículos pesados de motor, dispone que:

"Las infracciones a las otras disposiciones de esta Ley, serán consideradas como delitos menos graves y serán castigadas con multa de no menos de diez (10) dólares, ni más de trescientos (300) dólares, o con prisión de no menos de diez días y no más de tres meses."

Luis Hernández fué convicto en dos ocasiones, primero en la corte municipal, y después, luego de celebrarse un juicio *de novo,* en la corte de distrito, por haberse negado a entregar su placa al serle exigida de acuerdo con las disposiciones del inciso (*m*) del artículo 5, *supra,* como secuela de habérsele suspendido la licencia por el Comisionado del Interior por un período de siete días. Su primera contención es que la

corte de distrito erró al declarar sin lugar una excepción perentoria fundada en la alegada inconstitucionalidad del inciso (*m*).

Sólo se citan dos casos en apoyo de esta contención. En uno de ellos, *City of Shreveport* v. *Herndon,* 105 So. 244, la cuestión envuelta fué una pretendida delegación del poder legislativo. En el caso de autos no se presenta esa cuestión. En el caso de *Shreveport,* la Corte Suprema de Louisiana, después de exponer la regla general de que "cualquier estatuto u ordenanza que tienda a investir de una discreción arbitraria a un funcionario público, sin prescribir una regla definida para su guía, es anticonstitucional," continúa diciendo:

". . . La regla no deja de estar sujeta a excepción o modificación, desde luego, porque algunas situaciones y algunos estatutos y ordenanzas, dada la naturaleza misma de las cosas, exigen que se dote de discreción a un comisionado subordinado o al funcionario encargado de hacer cumplir el estatuto u ordenanza, v.g., cuando no es práctico establecer una regla definida o comprensiva, o cuando la discreción se refiere al cumplimiento de reglas policíacas que demandan el ejercicio inmediato de criterio."

El caso fué fallado por una corte dividida. Hay una interesante opinión disidente.

*Barrett* v. *City of New York,* 183 Fed. 793, el otro caso en que se apoya el apelante, es algo más aplicable. Allí, dijo la Corte de Circuito:

"Se alega además que la sección debe ser anulada porque deja la cuestión relativa a quién debe obtener una licencia a la discreción arbitraria e ilimitada del alcalde, quien puede revocar cualquier licencia de conductor a su capricho, sin exponer razón alguna para su proceder. Sección 307. Una objeción similar se suscitó ante este Tribunal en el caso de Engel v. O'Malley (opinión emitida el 31 de agosto, 1910), 182 Fed. 365. Allí se censuró un estatuto porque aparentemente dejaba la expedición de una licencia a la discreción arbitraria del contador del estado. Sobre esa crítica, la corte dijo:

"'Basta decir que los términos (del estatuto) pueden ser interpretados en una u otra forma; es decir, como que conceden al fun-

cionario la facultad de denegar una licencia caprichosamente, o como que le otorgan el poder de rehusar expedirla en el ejercicio honrado de una discreción razonable. A falta de una decisión de una corte de última instancia de este estado interpretando la fraseología del estatuto, debe asumirse que la última es la interpretación correcta, ya que de lo contrario la ley sería inconstitucional, y debe presumirse que fué la intención de la legislatura mantener sus leyes dentro de los límites fijados por la Constitución.' "

Claramente, el inciso (*m*) del artículo 5, *supra,* está sujeto a una interpretación similar. La opinión del Comisionado del Interior respecto a la culpabilidad del *chauffeur* o conductor envuelve "el ejercicio honrado de una discreción razonable." La ley no dice que puede suspenderse o revocarse una licencia al antojo o capricho del Comisionado del Interior, sino "si, a su juicio, dicha persona" (el *chauffeur* o conductor) "hubiere sido culpable de imprudencia temeraria o ineptitud en el manejo, o hubiere demostrado indiferencia hacia la seguridad pública o desprecio inexcusable de las disposiciones de esta Ley."

En 42 C. J. 747, sección 231, se dice que:

"En ausencia de cualquier disposición relativa a una vista en un estatuto que autoriza la revocación o suspensión de una licencia por causa suficiente, la junta o funcionario con incumbencia en el asunto puede actuar sin conceder a la persona a cuyo favor se ha expedido la licencia una vista antes de revocársela o suspendérsela, y toda vez que una licencia de chauffeur o conductor no confiere ningunos derechos de propiedad, una disposición estatutoria que autoriza la revocación o suspensión de tal licencia sin la celebración de una vista no es inconstitucional por privar a su poseedor de su propiedad sin el debido procedimiento de ley."

No creemos que sea necesario proseguir nuestra búsqueda. Según se indica en 6 R.C.L., págs. 102 y 103, sección 102:

". . . Sobre la parte que alega la inconstitucionalidad de un estatuto normalmente recae el peso de probar su contención, y debe destruir la robusta presunción que existe en favor de la validez de aquél. Se ha dicho que la parte que interesa se declare la inconstitucionalidad se echa sobre sus hombros el peso de establecer esa con-

clusión fuera de toda duda, y que una parte que sostiene que la legislatura ha usurpado poderes o ha infringido la Constitución, debe establecer afirmativa y claramente su criterio.''

No es misión de las cortes sentar por obra de encantamiento teorías más o menos dudosas por las cuales puede declararse que un estatuto es o no inconstitucional.

Otras contenciones son que la corte de distrito cometió error al declarar sin lugar una excepción perentoria basada en la teoría de que el acusado había sido expuesto anteriormente, y al condenarlo por el delito que se le imputaba. Ninguna de estas cuestiones, en la forma en que han sido discutidas en el alegato del apelante, exige seria consideración.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Texidor no intervino.